*E-FILED - 7/11/08*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID LITMON, JR., | No. C 03-03996 RMW (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| EDWARD FLORES, Warden, | |
| Respondent. | (Docket No. 45) |

**INTRODUCTION**

Petitioner David Litmon, a civilly-committed California state detainee who is proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his commitment in 2000 as a sexually violent predator ("SVP"). In response to an order to show cause, respondent has filed an answer and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and will deny the petition.

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.03\Litmon996.hcruling.md

**BACKGROUND**

Petitioner has committed multiple acts of sexual violence. A brief criminal history includes an arrest for annoying and molesting children, a conviction in 1972 for the rape of a fifty-eight year old woman, and convictions for the 1981 rape of two girls, one aged nine, the daughter of a woman petitioner was dating, and the other twelve, the first girl's babysitter.[1] Ans., Ex. B, Pt. 1 (Reporter's Transcript) at 80-84. In 1982, petitioner was convicted of raping the two girls and was sentenced to thirty-four years in prison. Ans., Ex. A (Civil Commitment Clinical Evaluation) at 52. Before his parole release date, the People filed a petition to have petitioner committed as an SVP. After a jury trial, petitioner was civilly committed as a SVP on May 2, 2000.[2] People v. Litmon, No. H029335, 2007 WL 1219972 at *2 (Cal. Ct. App. Apr. 26, 2007). As required by statute, the trial court committed petitioner for two years.[3] Id.

Petitioner appealed. The California Court of Appeal for the Sixth Appellate District, in an unpublished opinion, affirmed the judgment. Ans., Ex. E (People v. Litmon, H021538 (Cal. Ct. App. Aug. 26, 2002) at 34. The California Supreme and U.S. Supreme Courts denied his petitions for review. Id., Exs. G (California Supreme Court Order) & H (U.S. Supreme Court Order). Petitioner filed this federal habeas action in 2003.

As grounds for federal habeas relief, petitioner contends (A) the opinions set forth in the petition for his commitment under the SVPA were not made by independent

---

1. Petitioner was committed to Atascadero State Hospital from 1973 to 1976 as a "mentally disordered sex offender." Ans., Ex. B, Pt. 1 (Reporter's Trial Transcript) at 83. He was discharged to San Francisco County in 1976 and released from parole in 1978. Id.

2. The People filed petitions to extend petitioner's civil confinement in 2002, 2004, 2006, and 2008. People v. Litmon, 162 Cal. App. 4th 383, 390-91 (Cal. Ct. App. 2008). He remains civilly committed and is currently housed in Coalinga State Hospital. Docket No. 46.

3. In 2006, the California legislature replaced "two-year" with "indeterminate." Cal. Welf. & Inst. Code § 6604.

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.03\Litmon996.hcruling.md        2

professionals, thereby violating his right to due process; (B) he was detained beyond his parole date in violation of due process; (C) the commitment proceedings violated his right to confront the witnesses against him; (D) there was insufficient evidence to establish petitioner had a "serious difficulty in controlling his behavior" under the SVPA in violation of due process; (E) the prosecutor's use of a peremptory challenge as to the only black juror violated petitioner's equal protection and due process rights; (F) petitioner was denied the assistance of counsel to pursue his conditional release in violation of due process; (G) the superior court's reliance on a mental health report violated due process; and (H) the SVPA impermissibly places the burden on petitioner to show a change of circumstances for conditional release in violation of due process.[4]  Order to Show Cause at 3.

## STANDARD OF REVIEW

A federal habeas court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The court may not grant a petition with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  Id. § 2254(d)(1). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

The state court decision to which 2254(d) applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  When there is no reasoned opinion from the highest

---

4. Respondent contends that petitioner's claims are moot. Ans., P. & A. at 9.  Respondent asserts that because petitioner's 2000 commitment ended in 2002, he is no longer in custody on the 2000 commitment. Id.  Because the court concludes that petitioner's claims are without merit, the court need not reach the question of mootness.

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.03\Litmon996.hcruling.md         3

state court to consider the petitioner's claims, the court looks to the last reasoned opinion. See Nunnemaker at 801-06; Shackleford v. Hubbard, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

If constitutional error is found, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

## DISCUSSION

### I. Petitioner's Claims

#### A. Evaluators

Petitioner contends that his due process rights were violated by the use of a psychological evaluation by two non-independent evaluators. Pet. at 5.[5] Rather than being independent, these two "were instructed on how to accomplish the end result, what tools to use, and how to use them," that is, they followed the standards and practices of the Department of Mental Health ("DMH") and therefore were not "independent." Id. Because they were not independent, they should have been dismissed from the panel of evaluators.[6] Id.

The facts on which petitioner bases his contention are as follows. Under the SVPA, a convicted sex offender, if suspected to be a sexually violent predator, must be screened by the California Department of Corrections and the Board of Prison Terms. Cal. Welf. & Inst. Code ("CWIC") § 6601. As part of this screening, the person is first interviewed by two practicing psychiatrists or psychologists ("evaluators") chosen by the DMH. If this first set of evaluators agree that the person meets the SVPA criteria for commitment, the

---

5. This is petitioner's first amended petition. Because it is the operative petition, the court will refer to it as the petition.

6. Respondent contends that this claim is unexhausted. Ans., P. & A. at 13-14. Because the court finds that the contention is without merit, it need not consider whether the claim was unexhausted.

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.03\Litmon996.hcruling.md        4

DMH recommends that the People file a petition for commitment. Id. If the evaluators disagree – as happened in the instant case – two other evaluators who are "independent professionals," are selected to perform further examination. Id. If this second set of evaluators agree that the person meets the criteria for commitment, then a petition for commitment is filed. Id. The SVPA defines an "independent professional" as follows:

> Any independent professional who is designated by the Director of Corrections or the Director of Mental Health for purposes of this section shall not be a state government employee, shall have at least five years of experience in the diagnosis and treatment of mental disorders, and shall include psychiatrists and licensed psychologists who have a doctoral degree in psychology.

Id., 6601(g).

Petitioner's contention that the evaluators were not independent because they were "instructed" on how to arrive at a decision, that is, they followed the guidelines of the DMH, is without merit. Failure to comply with petitioner's definition of "independent" is not a basis for federal habeas relief. The statute's definition of "independent" controls, not petitioner's attempts to redefine statutory meaning. Also, under the very language of the SVPA, the evaluators are free to decide whether a possible detainee meets the relevant criteria, as evidenced by the fact that one of the first set evaluators found that petitioner did not meet the criteria for an SVP. Furthermore, because petitioner does not contend that the evaluators failed to meet the statutory criteria for "independent professionals," the court's inquiry is at an end.

### B. Detention Beyond Parole Date

Petitioner contends that his detention beyond the parole release date violated his right to due process. Pet. at 7. More specifically, petitioner asserts that the statute used by the People to obtain his detention (CWIC § 6601.5) was inapplicable in his case because petitioner did not fit under either of the two categories of inmates to which the code section applies. Id. The state appellate court disagreed with petitioner's interpretation of the statute and held that his detention beyond the parole release date was lawful. Ans., Ex. E at

20.

The facts on which petitioner bases his claim are as follows. The People requested under CWIC section 6601.5 an urgent review of the commitment petition on May 3, 1999, three days before petitioner's parole date of May 6. Ans., Ex. E at 15. Petitioner filed a demurrer to the petition, alleging that CWIC section 6601.5 applies only to inmates who are in custody on parole or inmates who are in custody on a temporary hold pursuant to section CWIC 6601.3, and not to him. Id. The trial court overruled the demurrer and ordered petitioner's temporary detention on May 5, 1999 until a probable cause hearing under CWIC section 6602 could be held. Id.

Petitioner's claim is not appropriate for federal habeas review because it involves an interpretation of state law. Petitioner does not contend that the statute is unconstitutional or that, aside from the alleged misapplication of the statute to his case, he was deprived of due process. Because this is purely a state law claim, this court must defer to the state court's interpretation that this California law applies to petitioner's case. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

### C. Exclusion of a Witness

Petitioner contends that his right to due process and the right to confront witnesses were violated when the trial court refused to allow him to a call a witness to testify at the commitment proceeding. Pet. at 7-8. More specifically, petitioner objects to the prosecution's right under CWIC section 6600(a)(3) to read documentary and testimonial evidence (jurors' statements, police and psychiatrists' reports, trial transcripts) into the record and that he was not allowed to counter this evidence by presenting this specific witness's testimony. Id.

The facts on which petitioner bases his claim are as follows. Shortly before the civil commitment trial, petitioner sought to call the (now adult) woman he had raped in 1981 when she was nine years old. Id. Petitioner contends that she would have testified that he was not the perpetrator of this predicate offense. Id. Defense counsel, based on a letter

from the victim to petitioner, asserted that the witness would testify that "in her heart, she believes [petitioner] was not the suspect that night that assaulted her." Ans., Ex. E at 31. "According to the defense proffer, the victim did not hear the perpetrator say anything and she did not see his car and she had been following the lead of her babysitter when she identified Litmon as the perpetrator to police. However, she heard the perpetrator laugh and it did not sound like [petitioner]." Id. at 32. Defense counsel also stated that "[t]his was the same testimony that was presented at trial." Id. at 31.

The trial court, upon a motion from the People, refused to allow petitioner to call this witness, stating that petitioner's notices to the court and the People were late, that the anticipated testimony did not warrant presentation, and that it would involve, essentially, a relitigation of the 1981 offense. Id. The state appellate court found no error in the trial court's ruling, finding that it "was not an abuse of discretion or a denial of due process." Id. at 34.

A review of some SVPA procedures is in order. At the commitment trial, the People must prove beyond a reasonable doubt that the defendant is a sexually violent predator. CWIC §§ 6602, 6604. The SVPA defines "sexually violent predator" as "a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." CWIC 6600(a). The SVPA outlines what can constitute proof of being a sexually violent predator:

> Conviction of one or more of the crimes enumerated in [the SVPA] shall constitute evidence that may support a court or jury determination that a person is a sexually violent predator, but shall not be the sole basis for the determination. The existence of any prior convictions may be shown with documentary evidence. The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of Mental Health.

CWIC section 6600(a).

1    The Confrontation Clause of the Sixth Amendment provides that in criminal cases
2 the accused has the right to "be confronted with witnesses against him." U.S. Const.
3 amend. VI. The ultimate goal of the Confrontation Clause is to ensure reliability of
4 evidence, but it is a procedural rather than a substantive guarantee. <u>Crawford v.</u>
5 <u>Washington</u>, 541 U.S. 36, 61 (2004). It commands, not that evidence be reliable, but that
6 reliability be assessed in a particular manner: by testing in the crucible of cross-
7 examination. <u>Id.</u>

8    The exclusion of evidence does not violate the Due Process Clause unless "it
9 offends some principle of justice so rooted in the traditions and conscience of our people as
10 to be ranked as fundamental." <u>Montana v. Egelhoff</u>, 518 U.S. 37, 42 (1996).

11    Petitioner's claims are without merit. Petitioner has not shown that section
12 6603(a)(3) violated his right to confront the testimonial and documentary evidence and
13 witnesses against him. As an initial matter, petitioner could have confronted the
14 documentary and testimonial evidence used against him. Nothing in section 6603 prevents
15 him from doing so.

16    Petitioner further contends that the use of the documentary evidence itself violates
17 his constitutional rights. For example, petitioner objects to the fact that section 6603 allows
18 the People to read into evidence a portion of a trial transcript that recounts a victim's
19 testimony, while he is not allowed to call the actual victim to the civil commitment hearing
20 in order to challenge her credibility.

21    As to this second part of his claim, petitioner is under a misapprehension as to the
22 nature and purpose of his right of confrontation at different proceedings. Criminal trial
23 testimony and documentary evidence are used and viewed differently in a criminal trial
24 than in a civil commitment trial. At a criminal trial, the jury determines whether the
25 evidence, testimonial and otherwise, is credible and whether it is sufficient to find the
26 defendant guilty of the charged offenses. At a civil commitment trial, the jury determines
27 whether a detainee meets the criteria for an SVP. At a criminal trial, a defendant has an
28

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.03\Litmon996.hcruling.md        8

1   opportunity – as petitioner had at his criminal trials – to challenge the credibility and
2   sufficiency of the evidence used to convict him. At a civil commitment trial, a civil
3   detainee has an opportunity – as petitioner had at his civil commitment trial – to challenge
4   whether there were in fact convictions and whether the nature of those convictions, along
5   with other evidence, are sufficient to prove that he is an SVP. The trial court informed a
6   prospective juror that "you will be asked to decide beyond a reasonable doubt whether
7   [petitioner] did suffer those prior convictions and whether they are of a certain type." Ans.,
8   Ex. B, Pt. 1 at 86. The female witness's testimony, if it contained what petitioner asserts it
9   would have, relates to the reliability and credibility of the evidence used to convict, and not
10  whether there was in fact a conviction. Because the procedures at both proceedings
11  provided adequate opportunities for petitioner to have confronted the evidence against him,
12  the court concludes that petitioner's confrontation claims are without merit.

13      Petitioner's due process claim regarding the trial court's exclusion of his witness is
14  also without merit. First, his request was untimely, an assertion petitioner does not dispute.
15  Second, the victim's anticipated testimony was not relevant to the issue at hand. The issue
16  was whether petitioner suffered certain convictions, not whether those convictions were fair
17  and reliable. In short, petitioner has not shown that the exclusion of the witness offends a
18  deeply rooted principle to an extent that violates due process. Petitioner's claims are
19  DENIED.

20      **D.    Sufficiency of Evidence**

21      Petitioner contends that there was insufficient evidence that he could not currently
22  control his sexually violent behavior. Pet. at 10. Petitioner fails to specify how the
23  evidence at trial was insufficient, but rather delivers his contention as a flat, undetailed
24  declaration.

25      In order to comply with constitutional requirements, the People must show that
26  petitioner has serious difficulty in controlling his criminal sexual violence, as required by
27  Kansas v. Crane, 534 U.S. 407 (2002). In Crane, the Supreme Court held that:
28

> It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

Id. at 413 (citations removed). The state appellate court concluded that "the evidence viewed as a whole was sufficient to establish that [petitioner] suffered from mental disorders resulting in a serous lack of ability to control his sexually violent behavior." Ans., Ex. E at 14.

Petitioner's claim is without merit. The evidence supporting a grant of the commitment petition was prodigious. Two psychologists, Drs. Finnberg and Shafer, testified at the civil commitment trial that petitioner suffered from serious mental disorders that made him unable to control his sexual behavior.[7] Finnberg testified that, after his review of the documentary evidence, petitioner suffered from three disorders, viz., paraphilia, alcohol abuse, and antisocial personality disorder.[8] Id. at 9. According to Finnberg, paraphilia is an addictive disorder that involves "sexually deviant urges, fantasies or behaviors that occur at least over a period of six months." Id. "Dr. Finnberg explained that 'deviant behaviors with non-consenting partners' are frequently seen with paraphilias." Id.

Finnberg stressed the "chronic, addictive nature" of petitioner's disorders, pointing out that petitioner "had admitted grabbing three women off the street and raping them before he committed a violent, forcible rape of a 58-year-old woman." Id. at 10. Finnberg testified that the records indicated that petitioner "said he did not want to do the rapes, but

---

7. Petitioner called psychologist Theodore Donaldson to testify as a defense expert at the civil commitment trial. Ans., Ex. B, Pt. 1 at 578. Donaldson offered opinions countering the People's assertions about paraphilia and rapists, but he had not "seen a single piece of paper" regarding petitioner and also stated that he had no opinion whether petitioner met the criteria for an SVP. Id. at 622-24.

8. Petitioner refused to have Finnberg interview him. Ans., Ex. E at 9.

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.03\Litmon996.hcruling.md      10

he 'just had to do it.'" Id. When asked at the civil commitment trial what petitioner's statement signified, Finnberg stated that "[t]he impulse to do it is so strong that it overrides whatever control the person has." Id.

On the subject of treatment and control of the behavior, Finnberg indicated that paraphilias, though perhaps able to control their behavior for a time, "will relapse if they put themselves in a high risk situation or don't follow through with their treatment." Id. According to Finnberg, petitioner, after some treatment, had some insight, "was able to say the right things," and talked about his anger at women and that "he was striking out at women, felt he needed to control them." Id. However, "[w]hat we're seeing . . . [is] a gap between understanding [the chronic disorder] and then following [] through with changes in your behavior." Id.

As to petitioner's alcoholism, Finnberg noted that petitioner had used alcohol during each offense, and had stated that "his sexual urges for non-consenting partners became even stronger under the influence of alcohol, and yet had continued to drink." Id. at 11. As to his antisocial personality disorder, Finnberg defined it as "a pervasive pattern of disregard for and violation of the rights of others occurring after the age fifteen," acts and behaviors for which petitioner has not displayed any remorse. Id.

In summary, Finnberg believed that petitioner's disorders met the SVP definition, that petitioner was likely to engage in sexually violent predatory behavior because he has serious difficulty controlling his behavior. Id. at 12. Based on his history, Finnberg opined that petitioner was able to refrain from committing sexually predatory acts only "when he is in a highly structured environment or under a great deal of supervision on parole." Id. at 11.

Shafer testified that she had diagnosed petitioner with three mental disorders, viz., sexual sadism, alcohol abuse, and antisocial personality disorder, and, also, that petitioner qualified as a psychopath.[9] Id. at 13. "Shafer explained that sexual sadism is a particular

---

9. Petitioner also refused to be interviewed by Shafer.

1 type of paraphilia indicating that an 'individual takes pleasure or sexual gratification or
2 excitement from causing pain, hurt or humiliation.'" Id.  A psychopath "is highly
3 manipulative and usually has a personality that is callous and remorseless, lacks deep
4 emotional connection, and exploits others." Id.  In summary, Shafer opined that petitioner
5 was more likely than not to reoffend, indicating that "both his alcohol abuse and antisocial
6 personality disorders predisposed petitioner to act on his deviant sexual interest." Id. at 13-
7 14.

In its review of petitioner's 2000 commitment, the state appellate court compared
Hendricks, a sexual offender of whose civil detention based on the likelihood of recidivism
the Supreme Court approved, to petitioner.[10]  Ans., Ex. E at 15.  Both persons had been
diagnosed "with forms of paraphilia," and both persons had indicated that they could not
control themselves, "but just had to rape." Id.

Based on this record, the court concludes that sufficient evidence was produced at
trial to indicate that petitioner had serious difficulty in controlling his behavior – the
psychologists' testimony spoke directly to the issue – and sufficient to distinguish
petitioner from the typical recidivist convicted in an ordinary criminal case.  This claim is
DENIED.

### E. Batson Challenge

Petitioner contends that the prosecutor's use of a peremptory challenge to exclude an
African-American juror was racially discriminatory and therefore violated petitioner's
constitutional rights.  Pet. at 11.  Petitioner cites as further (and "direct") evidence of this
that the prosecutor questioned petitioner whether his victims were "white." Id.

The facts on which petitioner bases his claim are as follows.  The People used a
peremptory challenge to excuse a prospective juror, "Miss J.," the only African-American
in the jury box.  Ans., Ex. E at 2.  Trial counsel objected and an unreported bench

---

10. Kansas v. Hendricks, 521 U.S. 346 (2002).

1  conference followed.[11]  Id.  The prosecutor reiterated in open court her stated reasons for
2  the exclusion: "She's by far the youngest juror in the box at the age of twenty, the lack of
3  higher education, her lack of any familiarity with psychologists or psychiatrists and
4  statistics, her unawareness of what [Megan's] Law is or the sexually violent predator law,
5  her unawareness of current events in the media regarding sexual assaults, child
6  molest[ations], [etc.]." Id.; Ans., Ex. B, Pt. 1 at 119.  The trial court overruled the
7  defense's objections: "In the Court's view, those are racially neutral reasons that would
8  give rise to a reasonable attorney's mind to exercise or not a peremptory challenge." Ans.,
9  Ex. E at 3; Ex. B, Pt. 1 at 119.

10      The use of peremptory challenges by either the prosecution or defendant to
11  exclude cognizable groups from a petit jury may violate the Equal Protection Clause.
12  Georgia v. McCollum, 505 U.S. 42, 55-56 (1992).  In particular, the Equal Protection
13  Clause forbids the challenging of potential jurors solely on account of their race.  Batson v.
14  Kentucky, 476 U.S. 79, 89 (1986).  A party may raise an equal protection claim when a
15  prospective juror is excluded because of race, regardless of whether the party and the
16  excluded juror share the same race.  Powers v. Ohio, 499 U.S. 400, 406 (1991).

17      Batson permits prompt rulings on objections to peremptory challenges pursuant to a
18  three-step process.  First, the defendant must make out a prima facie case that the

---

20  11. Petitioner made a Wheeler objection in state court. Ans., Ex. E at 2.  In California, a party who believes his opponent is using his peremptory challenges to strike jurors on grounds of group bias alone may raise the point by way of a timely motion.  People v. Wheeler, 22 Cal. 3d 258, 280 (1978).  The Wheeler motion procedure used by California courts does not satisfy the constitutional requirement laid down for the first step of Batson v. Kentucky, 476 U.S. 79 (1986).  See Johnson v. California, 545 U.S. 162, 168 (2005); Wade v. Terhune, 202 F.3d 1190, 1197 (9th Cir. 2000).  Since August 3, 1984, California courts have imposed the more stringent requirement that the defendant "show a strong likelihood," Wheeler, 22 Cal. 3d at 280, rather than merely "raise an inference," Batson, 476 U.S. at 96, that the prosecutor had excluded venire members from the petit jury on account of their race.  See Wade, 202 F.3d at 1196-97.  Because California courts using the Wheeler procedure have not applied federal law as clearly established by the United States Supreme Court, a federal habeas court need not defer to the California court's findings as it would otherwise be required to do under 28 U.S.C. § 2254(d).  See id., 202 F.3d at 1197.

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.03\Litmon996.hcruling.md        13

prosecutor has exercised peremptory challenges on the basis of race "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." <u>Batson</u>, 476 U.S. at 93-94.  Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. <u>Id.</u> at 97; <u>Wade v. Terhune</u>, 202 F.3d 1190, 1195 (9th Cir. 2000).  Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.  <u>Batson</u>, 476 U.S. at 98; <u>Wade</u>, 202 F.3d at 1195.  To fulfill its duty, the court must evaluate the prosecutor's proffered reasons and credibility in light of the totality of the relevant facts, using all the available tools including its own observations and the assistance of counsel.  <u>Mitleider v. Hall</u>, 391 F.3d 1039, 1047 (9th Cir. 2004); <u>Lewis v. Lewis</u>, 321 F.3d 824, 831 (9th Cir. 2003).  In evaluating an explanation of racial neutrality, the court must keep in mind that proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.  <u>Hernandez v. New York</u>, 500 U.S. 352, 355-62 (1991).  It also should keep in mind that a finding of discriminatory intent turns largely on the trial court's evaluation of the prosecutor's credibility.  <u>Rice v. Collins</u>, 546 U.S. 333, 340-42 (2006); <u>see</u> <u>also</u> <u>Lewis</u>, 321 F.3d at 830.

Under AEDPA, a state court's findings of discriminatory intent are presumed sound unless the petitioner rebuts the presumption by clear and convincing evidence.  <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005) (citing 28 U.S.C. § 2254(e)(1)).  A federal habeas court may grant habeas relief only "if it was unreasonable to credit the prosecutor's race-neutral explanations for the <u>Batson</u> challenge."  <u>Rice</u>, 546 U.S. at 338-41.

Petitioner's claim is without merit.  The prosecutor offered legitimate and nondiscriminatory reasons, based on information the juror provided, to exclude Miss J. – her youth, her lack of experience and knowledge of professionals working in the fields of psychiatry and psychology, and her lack of higher education.  Petitioner has not presented any evidence that would make it unreasonable for the Court to credit the prosecutor's race-neutral explanations or to counter the superior court's finding.  Without more, this court

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.03\Litmon996.hcruling.md       14

must defer to the credibility findings of the trial court. Accordingly, based on the record, the court finds that the prosecutor's use of her peremptory challenges did not violate the Equal Protection Clause.

### F. Right to Counsel

Petitioner contends that the superior court deprived him of his right to counsel guaranteed to him by CWIC section 6608 when it failed to appoint counsel to represent petitioner in his petition for conditional release. Pet. at 11.

Petitioner's clam is without merit. On its very terms, his contention concerns his rights under California law and therefore it is not a cognizable federal claim. Accordingly, this claim is DENIED.

Even if petitioner had presented a federal claim, the court cannot say that the superior court committed a constitutional error by not granting petitioner counsel. Petitioner filed his request for counsel on the same day he filed his petition for conditional release. Ans., Ex. P (People v. Litmon, No. H023263 (Cal. Ct. App. Sept. 5, 2002) at 8. The superior court, then, could not consider his request for counsel to assist him with his petition because he had already filed his petition. Once the superior court denied the petition, there was no conditional release proceeding for which petitioner may have required the services of an attorney.

### G. Mental Health Report

Petitioner contends that the superior court violated his rights to confrontation and due process when it considered a report – which petitioner alleges he was not allowed to see – by the DMH in making its decision to deny his petition for conditional release. Pet. at 12. The state appellate court found the superior court's decision proper, agreeing that the petition was frivolous even if the DMH report was not considered. Ans., Ex. P at 11.

The facts on which petitioner's claim is based are as follows. CWIC section 6608 permits an SVP detainee to petition at any time for conditional release into a community treatment program. The superior court can review the petition and decide whether

petitioner's explanation in support of his release is frivolous. CWIC § 6608. If the superior court determines that the petition is frivolous, it shall deny the petition without a hearing. Id.

As stated above, petitioner was civilly committed in 2000. In 2001, petitioner filed a petition for conditional release. Ans., Ex. P at 1. Also in 2001, the DMH, pursuant to its assigned statutory duty under CWIC section 6605, issued a report stating that petitioner "continues to pose a danger to the health and safety of others" and should not be discharged from commitment. Id. at 4. The superior court reviewed the petition and the DMH's report and found that the petition was frivolous and dismissed it without holding a hearing. Id. at 5. The state appellate court affirmed the finding of the superior court, stating that "[n]either [petitioner's] petition nor his supporting declaration states specific facts showing that he made concrete progress in treating his diagnosed mental disorders that would warrant his release into the community, even if conditionally." Ans., Ex. P at 10-11.

Petitioner's claim is without merit. Because the petition on its own was facially insufficient, the outcome would have been the same, even if the superior court (unconstitutionally) used the DMH report. Because it was his petition, petitioner bore the burden of stating and establishing specific facts that would support a grant of conditional release. This petitioner failed to do. This claim is DENIED.

### H. Petitioner's Burden

Petitioner contends that SVPA violated his right to due process by requiring him, in filing his petition for conditional release, to establish that his circumstances have so changed as to warrant conditional release. Pet. at 12-13.

Petitioner's claim is without merit. The state appellate court agreed with petitioner, stating that he does not have to show a change of circumstances. Ans., Ex. P at 10. Rather, the superior court must determine whether the committed person would be a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior owing to his diagnosed mental disorder. CWIC §§ 6608(a), (d). As

stated above, the state appellate court, though it found that the superior court used the incorrect standard, it affirmed the superior court's decision because the petition was indeed frivolous. This claim is DENIED.

## CONCLUSION

Applying the highly deferential standard imposed by AEDPA, this court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (1), (2). The petition for writ of habeas corpus is DENIED. The clerk shall enter judgment and close the file.

Petitioner's motion for leave to file a second supplemental briefing in support of his traverse (Docket No. 45) is DENIED.

**IT IS SO ORDERED.**

DATED: 7/7/08

_____
RONALD M. WHYTE
United States District Judge